Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email:  rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email:  rc@rosscornelllaw.com

Attorneys for Plaintiff, SAMUEL DAWKINS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL DAWKINS, on behalf of himself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>MIDFIRST BANK, a federally chartered savings association,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1) Cal. Penal Code § 631<br>2) 18 U.S.C. § 2511(1)(a)<br>3) Cal. Bus. & Prof. Code § 17200, *et seq.*<br>4) Cal. Constitution Art. I § 1<br>5) Intrusion Upon Seclusion<br>6) Unjust Enrichment |

1

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1. Plaintiff SAMUEL DAWKINS ("Plaintiff") files this class action complaint on behalf of himself and all others similarly situated (the "Class Members") against Defendant MidFirst Bank, a federally chartered savings association ("Defendant" or "MidFirst Bank"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all others, by and through the investigation of undersigned counsel.

## I.    NATURE OF THE ACTION

2. This is a class action lawsuit brought on behalf of all California residents who have accessed and used www.midfirst.com and/or www.moneymoments.com (collectively, the "Website"), websites that Defendant owns, operates, and controls and provides for public access and use.

3. During his use of the Website, Plaintiff navigated to multiple pages on the Website, unaware that Defendant was causing and permitting Third Parties to intercept the content of his communications and reveal his personal and sensitive browsing activity, including his verbatim on-site search queries for "Debt solutions" and "debt" and communications reflecting his interest in debt-solution, debt-consolidation, and personal-finance topics.

4. Defendant caused the interception of the contents of Plaintiff's communications with the Website, including the page URLs identifying what he was browsing, the page titles, descriptive event slugs that themselves restate the content of each page, and the referrer URLs reflecting prior navigation, all of which were transmitted to the Third Parties during the page-load process itself.

5. As set forth in the Specific Allegations section of this Complaint below, Defendant surreptitiously embeds and operates third-party tracking technologies on the Website that intercept the contents of users' electronic communications, including the page URLs reflecting what users are browsing, in real time and without notice or consent. Defendant intentionally deploys these technologies to accomplish their commercial objectives, including identity resolution, audience segmentation, and the

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

monetization of users' browsing activity through targeted advertising and real-time bidding.

6. Defendant deploys these interception technologies in violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, and the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a). Defendant has done so from prior to the beginning of the class period in this case and continuously through to today and ongoingly.

7. Plaintiff personally used the Website during the class period and preserved an HTTP archive file (commonly known as a HAR file) of his own browsing session. Counsel caused a technical investigation to be conducted that replicated URLs and user flows presented in Plaintiff's HAR file and that documented the third-party tracking transmissions described in this Complaint. The figures and screenshots reproduced below are from that investigation and are included herein as illustrative examples of how the Website's tracking technologies operated when Plaintiff visited the Website.

## II. GENERAL ALLEGATIONS

8. A pixel tracker, also known as a web beacon, is a tracking mechanism embedded in a website that monitors user interactions. It typically appears as a small, transparent 1x1 image or a lightweight JavaScript snippet that activates when a webpage is loaded, or a user performs a tracked action.

9. When triggered, the pixel causes the user's browser to transmit data to third-party servers, including the contents of the user's communications with the Website such as page URLs identifying what the user is browsing, search-query parameters, page titles, and referrer URLs reflecting prior navigation.

10. When users visit the Website, Defendant causes tracking technologies to be embedded in visitors' browsers. These include, but are not limited to, the following:

- The Google Trackers

11. The third parties who operate the above-listed trackers use the intercepted contents of users' communications collected via the Website for their own independent purposes tied to broader advertising, identity-resolution, and audience-measurement

3

ecosystems, and for data monetization strategies that go beyond Defendant's direct needs, for their own financial gain. The above-listed trackers are referred to herein collectively as the "Trackers" and their operators below are referred to collectively as the "Third Parties."

12. The Trackers are operated by Google LLC. Defendant knowingly embeds and deploys the Trackers on the Website to facilitate the third parties' interception of the contents of users' electronic communications.

13. The third-party tracking code executed contemporaneously with each page load and navigation event initiated by Plaintiff's browser. As the browser initiated each HTTP request to retrieve Website content, embedded scripts automatically caused the interception and transmission of the contents of users' communications with the Website to remote third-party endpoints during the page-load process itself, before the requested page finished rendering and without any user interaction or authorization.

14. Plaintiff and the Class Members did not consent to the installation, execution, embedding, or injection of the Trackers on their devices and did not consent to the contents of their communications with the Website being intercepted by third parties. The Website did not display any consent banner, pop-up, cookie notice, or other authorization mechanism requesting permission before deploying the Trackers to intercept user communications. Defendant did not obtain express prior consent for the interception and transmission of the contents of users' communications for advertising, analytics, or monetization purposes.

15. Generalized references herein to users, visitors and consumers expressly include Plaintiff and the Class Members.

### III.  PARTIES

16. Plaintiff SAMUEL DAWKINS is a California citizen residing in Tulare County, California, and has an intent to remain there. Plaintiff was in California, in Tulare County, when he visited the Website, which occurred on multiple occasions during the class period including but not limited to on May 2, 2026. The allegations set

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

forth herein are based on the Website as configured when Plaintiff visited it.

17. Defendant MidFirst Bank is a federally chartered savings association with its main office and principal place of business in Oklahoma City, Oklahoma. MidFirst Bank owns, operates, and controls the Website.

18. Through the Website and related digital platforms, Defendant conducts banking, lending, and financial-services business directed at consumers nationwide and serves consumers in California and throughout the United States.

## IV.    JURISDICTION AND VENUE

19. This Court has personal jurisdiction over Defendant because Defendant has purposefully and deliberately availed itself of the privilege of conducting business in California, deliberately operates the Website accessible to and used by California consumers, has directed California-based ad-tech and analytics infrastructure at those consumers' communications, and because Plaintiff's claims arise directly out of Defendant's California-directed conduct.

20. Defendant maintains a substantial branch footprint in California, which it operates through its 1st Century Bank division. Defendant's California offices are concentrated in Southern California and include full-service branch locations in Downtown Los Angeles and Century City, along with additional banking offices in Orange County, Santa Barbara, San Diego, the South Bay, and the San Fernando Valley. Defendant is presently expanding into the Northern California market with a newly hired local banking team and intends to begin providing banking services in the region effective immediately, with a physical office opening in the coming months. In addition to these retail branches, Defendant conducts commercial lending, private banking, and wealth management operations in California, and has publicly announced ongoing expansion of its California presence.

21. Defendant conducts banking, lending, and financial-services business directed at consumers nationwide, including California consumers, and operates the Website on top-level domains directed to California consumers without any California-

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

specific gating or geolocation restriction. The Website is the conduct at issue in this Complaint, and California consumers visiting the Website are the population from which Defendant intercepts communications.

22. Defendant deliberately installed and continues to operate Google tracking infrastructure on the Website. Google LLC is a California limited liability company headquartered in Mountain View, California. Defendant's deliberate installation of the Google endpoints causes outbound HTTP requests bearing California users' page URLs, verbatim page titles, search queries, and persistent Google identifiers to flow continuously to Google's California-based infrastructure.

23. Plaintiff's claims arise directly out of and relate to these California-directed contacts. When Plaintiff visited the Website, Defendant's deliberately installed California-directed tracking infrastructure caused Plaintiff's communications with the Website, including his verbatim search queries for debt solutions and debt, the URLs of the debt calculators and money-management content he accessed, and the verbatim titles of those pages, to be transmitted in real time to the California-based Google infrastructure, accompanied by persistent user-level identifiers.

24. Exercise of personal jurisdiction in this District over Defendant for these California-arising claims is reasonable and consistent with traditional notions of fair play and substantial justice.

25. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under federal law, specifically 18 U.S.C. § 2520, which provides a civil cause of action for violations of 18 U.S.C. § 2511(1)(a) of the Federal Wiretap Act.

26. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

27.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000, exclusive of interest and costs, there are over 100 members of the proposed Class, and at least one Class Member is a citizen of a State different from Defendant's state of citizenship, satisfying CAFA's minimal-diversity requirement.

28.     Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because (1) Defendant regularly transacts business in this District, operates the Website that serves California residents in this District, and is subject to personal jurisdiction here; (2) a substantial part of the events or omissions giving rise to the claims occurred within this District, including Plaintiff's California-located use of the Website from his Tulare County residence; (3) Plaintiff resides in this District; and (4) Defendant derives substantial revenue from California consumers in this District.

## V.    FEDERAL AND STATE PRIVACY LAWS

### 1.    The California Invasion of Privacy Act (CIPA)

29.     The California Invasion of Privacy Act (CIPA) is a legislative measure designed to safeguard the privacy rights of California residents by prohibiting unauthorized wiretapping and eavesdropping on private communications. The California Legislature recognized the significant threat posed by emerging surveillance technologies, stating that "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society" (Cal. Penal Code § 630).

30.     Despite predating the Internet, CIPA has been applied to email and other Internet communications so long as that application is consistent with the statutory text and purpose. Section 631(a) reaches the interception of email content and online communications and consent under CIPA must be obtained before the interception occurs.

/ / /

7

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

31.     CIPA's text and history confirm that the Legislature intended to protect core privacy rights, as reflected in § 630's declaration that the statute was enacted to protect the right of privacy of the people of this state. CIPA codifies a substantive right to privacy such that the violations of CIPA alleged herein constitute concrete injuries sufficient to establish Article III standing.

32.     Individuals may pursue legal action against violators of Cal. Penal Code § 631 and are entitled to seek $5,000 in statutory penalties per violation. Cal. Penal Code § 637.2(a)(1).

### 2.     The Federal Wiretap Act

33.     The Federal Wiretap Act, enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and amended by the Electronic Communications Privacy Act (ECPA) of 1986, prohibits the intentional interception of wire, oral, or electronic communications. Congress enacted the statute to safeguard the privacy of communications against unauthorized interception, recognizing that unchecked surveillance technology poses a fundamental threat to individual liberty.

34.     The Federal Wiretap Act applies to communications transmitted over the Internet. The 1986 ECPA amendments expressly extended the statute's protections to electronic communications as defined under 18 U.S.C. § 2510(12) to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." That includes data transmitted over the internet such as the contents of web browsing activity via HTTP requests as alleged here.

35.     A person whose electronic communications are intercepted in violation of 18 U.S.C. § 2511 may bring a civil action pursuant to 18 U.S.C. § 2520(a). Available relief includes the greater of actual damages or statutory damages of $100 per day for each day of violation or $10,000, whichever is greater, plus punitive damages in appropriate cases, reasonable attorney's fees, and other litigation costs reasonably

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

incurred.

## VI.    SPECIFIC ALLEGATIONS

36.    Defendant owns, operates, and controls the Website. Defendant's own Privacy Practices expressly state that they apply to the MidFirst Bank website and mobile application and to any online or mobile site or application owned or controlled by MidFirst Bank or any of its divisions, confirming that both www.midfirst.com and moneymoments.com are MidFirst-controlled properties. The Website is the consumer-facing digital channel through which Defendant offers and markets its banking, lending, deposit, and financial-services products, and through which Defendant publishes personal-finance and money-management content, including financial calculators and on-site search features whose user-typed query terms are encoded directly into the search-results URL.

37.    Defendant's own Privacy Practices acknowledge that Defendant automatically collects, when a visitor uses the Website, the visitor's IP address, geographic location, and analytic information regarding usage, and that Defendant gathers information through cookies, tags, and similar technologies. Defendant further acknowledges that it uses cookies to track the visitor's activity on the Website, including what pages the visitor views, that it uses network advertisers which use their own cookies, and that it uses Google Analytics to collect usage information about the Website. The categories Defendant acknowledges collecting are the same human-readable communication-content categories that the Trackers intercepted from Plaintiff during his sessions on the Website.

38.    Defendant's own Privacy Practices further state that Defendant does not monitor or respond to Do Not Track signals. Defendant thereby acknowledges that it disregards browser-based opt-out signals and continues to transmit visitors' communications to the Trackers regardless of any such signal. The intercepted communication content of Plaintiff's and the Class Members' Website communications is monetized through Defendant's commercial advertising and analytics arrangements

9

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

with the Trackers identified herein.

39.    During his use of the Website, and as reflected in his HAR file, Plaintiff navigated to the following URLs, unaware that Defendant was causing and permitting Third Parties to intercept the content of his communications:

- https://www.midfirst.com/search?keyword=Debt+solutions;
- https://www.midfirst.com/ways-to-bank/financial-resources/calculators/debt;
- https://moneymoments.com/?s=debt;
- https://moneymoments.com/resources/calculators/use-a-lump-sum-to-pay-down-debt/;
- https://moneymoments.com/resources/calculators/debt-consolidation/;
- https://moneymoments.com/money-management/taming-shopping-compulsion/;
- https://moneymoments.com/money-management/setting-financial-boundaries/.

40.    Plaintiff alleges that the tracking mechanisms described below operated on the Website during Plaintiff's visits to the URLs identified above and intercepted the substantive contents of his communications with the Website. The figures that appear in the per-tracker subsection below depict the tracking behavior that the Website is configured to produce when a user visits the URLs, and evidence that Defendant's deliberately installed tracking infrastructure intercepted the contents of communications with the Website during Plaintiff's session.

41.    Beyond the URLs, each Tracker receives, during each of those page loads, the page URL identifying the content Plaintiff was viewing, the verbatim page title, and a persistent Google identifier, in the same outbound HTTP request. Each of those fields communicates the substance, purport, or meaning of what Plaintiff was reading or searching for on the Website, and is therefore content of Plaintiff's electronic

communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8).

**1.    *The Google Trackers***

42.    Defendant embedded and deployed a coordinated suite of Google trackers across the Website, operated by Google LLC. On www.midfirst.com, Defendant deployed three distinct Google tracking endpoints: Google Ads (www.google.com/pagead/1p-user-list), Google DoubleClick (googleads.g.doubleclick.net/pagead/viewthroughconversion), and Google Analytics 4 (www.google-analytics.com/g/collect). On moneymoments.com, Defendant deployed Google Analytics 4 (www.google-analytics.com/g/collect). Google LLC is a California limited liability company headquartered in Mountain View, California. The Google trackers fire automatically when a user visits the Website, transmitting the full page URL (in the url or dl parameter), the verbatim page title (in the tiba or dt parameter), the referrer URL and screen dimensions, and a persistent Google identifier in the same outbound request: a persistent Google advertising identifier (auid) on the Google Ads and Google DoubleClick endpoints, and a persistent Google Analytics client identifier (cid) on the Google Analytics 4 endpoint. The Google identifiers mirror first-party _ga and _gcl_au cookies that Defendant causes to be stored on the visitor's browser under the .midfirst.com and .moneymoments.com domains. Google LLC operates one of the largest digital-advertising, identity-resolution, and measurement platforms in the world, using intercepted browsing data to build advertising and behavioral profiles, power real-time bidding auctions, and enable interest-based and remarketing-based advertising.

43.    Plaintiff visited the Website at https://www.midfirst.com/search?keyword=Debt+solutions, the midfirst.com on-site search-results page whose URL contains, in the keyword query parameter, Plaintiff's verbatim search query "Debt solutions." When Plaintiff navigated to that URL, the Website caused Plaintiff's browser to transmit Google tracking requests to www.google.com, googleads.g.doubleclick.net, and www.google-analytics.com, each

carrying the full search URL (including the verbatim "Debt solutions" query), the page title, and a persistent Google identifier in the same outbound request.

44.    Figure 1 is a Fiddler Classic raw request capture showing a request transmitted from the user's browser to Google Ads at www.google.com/pagead/1p-user-list. The request contains the full page URL, including the search query "Debt solutions," in the url parameter, the page title in the tiba parameter, and a persistent Google advertising identifier in the auid parameter, establishing that the page URL identifying the user's debt-solutions search and the page title were transmitted to Google in the same outbound request as a persistent Google identifier.

**Figure 1**



45.    Figure 2 is a Fiddler Classic raw request capture showing a request transmitted from the user's browser to Google DoubleClick at googleads.g.doubleclick.net/pagead/viewthroughconversion. The request contains the full page URL in the url parameter, the page title in the tiba parameter, and the same persistent Google advertising identifier in the auid parameter, establishing that the page URL and page title were transmitted to a second Google endpoint in the same outbound

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

request as the persistent Google identifier.

**Figure 2**

46. Figure 3 is a Fiddler Classic raw request capture showing a request transmitted from the user's browser to Google Analytics 4 at www.google-analytics.com/g/collect. The request contains the full page URL in the dl parameter, the verbatim page title in the dt parameter, the referrer URL in the dr parameter, and a persistent Google Analytics client identifier in the cid parameter, establishing that the page URL, page title, and referrer were transmitted to Google in the same outbound request as a persistent Google identifier.

/ / /

/ / /

/ / /

13

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 3**



47.    Figure 4 is a Chrome DevTools Application-panel capture showing the cookie storage on the visitor's browser during the load of a midfirst.com page. The capture identifies the persistent Google identifier cookies that Defendant causes to be stored on the .midfirst.com domain, including the _ga Google Analytics client-identifier cookie, which carries an expiration date extending into 2027, and the _gcl_au Google Ads conversion-linker cookie, which carries an expiration date extending into 2026.

/ / /

/ / /

/ / /

14

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**<u>Figure 4</u>**



48.    Plaintiff also navigated to the financial-resources and debt-calculator pages of www.midfirst.com, and to moneymoments.com, the MidFirst-controlled personal-finance content site, where Plaintiff visited the on-site search page https://moneymoments.com/?s=debt (carrying his verbatim search query "debt"), two debt-related financial calculators concerning the use of a lump sum to pay down debt and debt consolidation, and two money-management articles concerning the taming of shopping compulsion and the setting of financial boundaries. When Plaintiff navigated to each of those moneymoments.com URLs, the Website caused Plaintiff's browser to transmit Google Analytics 4 tracking requests to www.google-analytics.com/g/collect, each carrying the full page URL, the verbatim page title, and a persistent Google Analytics client identifier in the same outbound request.

49.    Figure 5 is a Fiddler Classic raw request capture showing a request transmitted from the user's browser to Google Analytics 4 at www.google-analytics.com/g/collect during the load of a moneymoments.com page. The request contains the full page URL in the dl parameter, the verbatim page title in the dt

15

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

parameter, the screen resolution in the sr parameter, and a persistent Google Analytics client identifier in the cid parameter, establishing that the page URL and page title were transmitted to Google in the same outbound request as a persistent Google identifier.

**Figure 5**

50.    Figure 6 is a Chrome DevTools Application-panel capture showing the cookie storage on the visitor's browser during the load of a moneymoments.com page. The capture identifies the persistent Google Analytics identifier cookies that Defendant causes to be stored on the .moneymoments.com domain, including the _ga client-identifier cookie, with an expiration extending into 2027.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 6**



51.     Google's servers returned responses to the Google tracking requests, including HTTP 200 OK responses on the Google Ads endpoint, HTTP 302 responses on the Google DoubleClick endpoint, and HTTP 204 No Content responses on the Google Analytics 4 endpoint, confirming that Google LLC received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website.

52.     Google LLC used the intercepted browsing data, including the URLs and verbatim page titles identifying Plaintiff's browsing activity (his verbatim searches for "Debt solutions" and "debt," his use of debt-payoff and debt-consolidation calculators, and his interest in money-management content concerning shopping compulsion and financial boundaries), tied to the persistent Google identifiers, to build cross-session advertising and behavioral profiles, power real-time bidding auctions, and enable interest-based and remarketing-based advertising across the Google advertising ecosystem. The first-party _ga and _gcl_au cookies set on the .midfirst.com and .moneymoments.com domains, and the Google account cookies transmitted on the

17

Google requests, enable Google LLC to link Plaintiff's communications with the Website to a continuing user profile across sessions, devices, and websites. Defendant transmitted these requests in full personalized tracking mode, with the npa parameter set to 0 and no IP-anonymization parameter, applying no effective anonymization or consent mechanism. This commercial use of intercepted content is precisely what the Google trackers are designed and marketed to accomplish.

53.    Google LLC is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant aided and abetted Google's interception by embedding and configuring the Google trackers on the Website, including by causing the first-party _ga and _gcl_au cookies to be stored on Defendant's own .midfirst.com and .moneymoments.com domains and transmitted to Google. By causing Google LLC to intercept the contents of Plaintiff's electronic communications with the Website in this manner, Defendant violated Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

## VII.    CLASS ALLEGATIONS

54.    Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class" or "Class Members") defined as follows:

> All persons within California whose electronic communications with the Website, including the URL contents of their HTTP requests to the Website, were intercepted by one or more Trackers between May 2, 2025 and the present.

55.    **NUMEROSITY:**  Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members can be ascertained by the records maintained by Defendant.

56.    **COMMONALITY:**  Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions include but are not limited to:

- Whether Defendant configured the Website to transmit the URL contents

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

of visitors' HTTP requests to the Trackers;

- Whether the URL contents of those requests constitute "contents" of electronic communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8);

- Whether Defendant's conduct constitutes interception of electronic communications in violation of Cal. Penal Code § 631(a);

- Whether Defendant's conduct constitutes intentional interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a);

- Whether Defendant's conduct constitutes an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200;

- Whether Plaintiff and Class Members are entitled to statutory damages;

- Whether Class Members are entitled to injunctive relief;

- Whether Defendant's conduct violates the California Constitution;

- Whether Defendant's conduct constitutes an intrusion upon seclusion;

- Whether Defendant was unjustly enriched at Plaintiff's and Class Members' expense;

- Whether Class Members are entitled to disgorgement of data unlawfully obtained; and

- Whether Class Members are entitled to restitution.

57. **TYPICALITY:** As a person who visited the Website and whose URL contents were intercepted by the Trackers, Plaintiff is asserting claims that are typical of the Class Members. Plaintiff's experience with the Trackers is typical to Class Members.

58. **ADEQUACY:** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

59. **SUPERIORITY:** A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is

impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

## VIII.  FIRST CAUSE OF ACTION

### Violations of Cal. Penal Code § 631

### By Plaintiff and the Class Members Against Defendant

60.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

61.    Plaintiff brings this cause of action on behalf of himself and the Class.

62.    California Penal Code § 631(a) prohibits any person from willfully and without the consent of all parties to the communication reading, or attempting to read, or learning the contents or meaning of any message, report, or communication while the same is in transit, and from using or attempting to use, in any manner or for any purpose, any information so obtained.

63.    The full URLs of Plaintiff's and Class members' HTTP requests to the Website constitute the "contents" of those communications within the meaning of § 631(a). As described in the preceding tracker-specific allegations, the Trackers received human-readable copies of URL strings in the same HTTP request or response in which the Website servers received them, while that communication was in transit between Plaintiff's browser and the Website.

64.    Defendant intentionally configured their website to transmit Plaintiff's and Class members' URL contents to each Tracker, itself received and used those URL contents for audience segmentation and ad targeting, and permitted each Tracker to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to interception of the contents of their communications by any Tracker, and no other exception to § 631(a) applies.

20

65.    Each interception constitutes a separate violation of § 631(a). Plaintiff and the Class are entitled to recover the greater of actual damages or $5,000 per violation pursuant to Cal. Penal Code § 637.2(a)(1), injunctive relief, and such other relief as the Court deems just and proper.

## IX.    SECOND CAUSE OF ACTION

### Violations of 18 U.S.C. § 2511(1)(a)

### By Plaintiff and the Class Members Against Defendant

66.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

67.    Plaintiff brings this cause of action on behalf of himself and the Class.

68.    18 U.S.C. § 2511(1)(a) prohibits any person from intentionally intercepting any wire, oral, or electronic communication. The Federal Wiretap Act defines "contents" to include any information concerning the substance, purport, or meaning of a communication. 18 U.S.C. § 2510(8).

69.    The full URLs of Plaintiff's and Class members' HTTP requests to the Website are "contents" of electronic communications within the meaning of 18 U.S.C. § 2510(8). Those URLs communicate the substance and meaning of Plaintiff's and Class members' browsing. As described in the preceding tracker-specific allegations, the Trackers intercepted URL contents in real time, in the same HTTP request or response in which the Website's servers received them, while those communications were in transit.

70.    Defendant intentionally configured their website to transmit Plaintiff's and Class members' URL contents to each Tracker, itself received and used those URL contents for audience segmentation and ad targeting, and permitted each Tracker to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to this interception, and no other exception applies.

71.    Plaintiff and the Class are entitled to relief under 18 U.S.C. § 2520,

21

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

including the greater of actual damages plus any profits made by Defendant through the interception, or statutory damages of $100 per day per violation or $10,000, whichever is greater, together with punitive damages, reasonable attorney's fees, and litigation costs.

## X.    THIRD CAUSE OF ACTION

### Violations of Business & Professions Code § 17200

### By Plaintiff and the Class Members Against Defendant

72.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

73.    Plaintiff brings this cause of action on behalf of himself and the Class.

74.    California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice. Defendant's conduct constitutes both an unlawful and an unfair business practice.

75.    Defendant's conduct is unlawful. By facilitating the interception of the contents of Plaintiff's and Class members' electronic communications without consent, Defendant violated California Penal Code § 631(a) and 18 U.S.C. § 2511(1)(a). Each statutory violation constitutes a predicate unlawful business act or practice under § 17200.

76.    Defendant's conduct is also unfair. Defendant covertly transmitted Plaintiff's and Class members' URL contents to third-party Trackers for commercial monetization without disclosure, authorization, or compensation. The harm to Plaintiff and the Class, including but not limited to the interception and commercial exploitation of sensitive personal-finance browsing data and the financial value thereof, is substantial, is not outweighed by any legitimate countervailing benefit, and could not reasonably have been avoided by Plaintiff or Class members. The unfair character of Defendant's conduct is further established by the gap between Defendant's own privacy disclosures and their actual practice: Defendant's Online Privacy Policy expressly admits that Defendant will endeavor to recognize commercially recognized opt-out

22

signals including the Global Privacy Control, yet Defendant has caused to be deposited on California users' browsers a first-party usprivacy=1NNN cookie in which the third-party-opt-out bit is affirmatively cleared, and Defendant transmit that same usprivacy=1NNN value to each Tracker on each outbound tracking request, confirming that, in practice, Defendant does not honor any opt-out signal from California consumers.

77.    Plaintiff and Class members suffered injury in fact and lost money or property as a result of Defendant's conduct. Browsing data identifying the specific content a user views, including browsing URLs of the kind intercepted here, has recognized and quantifiable economic value in the digital advertising marketplace. Each Tracker enabled by Defendant used that intercepted URL content to build advertising profiles and to participate in real-time bidding auctions in which advertisers pay measurable clearing prices for access to audiences identified by precisely this kind of browsing activity.

78.    Plaintiff and Class members provided their browsing data as implicit consideration for access to the Website, a data-for-services exchange that was not disclosed and to which they did not consent. Defendant and the Trackers are designed to and on information and belief did capture the economic benefit of that exchange, in the form of advertising revenue and real-time-bidding clearing prices generated by the Trackers' use of users' intercepted URL data, without compensating Plaintiff or Class members. Plaintiff and Class members were thereby deprived of the economic value of their data and of the full value of a privacy-protective browsing experience they reasonably expected and would have bargained for had the exchange been disclosed.

79.    Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing their unlawful and unfair practices, restitution of monies acquired by Defendant through those practices, and reasonable attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## XI.    FOURTH CAUSE OF ACTION

### Violation of the California Constitution, Article I, Section 1

### By Plaintiff and the Class Members Against Defendant

80.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

81.    Plaintiff brings this cause of action on behalf of himself and the Class.

82.    Article I, Section 1 of the California Constitution provides that privacy is among the inalienable rights of all people in California. To state a claim for violation of the constitutional right to privacy, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

83.    Plaintiff and Class Members have a legally protected privacy interest in the contents of their electronic communications with the Website, including the specific page URLs reflecting their browsing activity. California law recognizes a legally protected privacy interest in personal browsing activity, particularly when that activity is covertly intercepted by commercial third parties for advertising, profiling, and identity-resolution purposes without disclosure or consent.

84.    Plaintiff and Class Members had a reasonable expectation of privacy in the contents of their electronic communications with the Website. A reasonable person visiting a bank consumer-facing website like www.midfirst.com or its personal-finance content site moneymoments.com does not expect that the specific pages they browse, the specific search terms they submit, and the financial calculators and content they use will be covertly transmitted to a third-party commercial tracking company in real time, linked to persistent cross-session user profiles, and used for advertising targeting, analytics, and commercial monetization.

85.    Defendant's conduct constitutes a serious invasion of that privacy. By deliberately embedding and configuring the Google trackers on the Website, Defendant caused the real-time, covert interception of the URL contents of Plaintiff's and Class

Members' electronic communications and their transmission to a third party where they were linked to persistent cross-session profiles and used for commercial advertising and analytics purposes without Plaintiff's knowledge or consent. The severity of the invasion is heightened by the nature of the Website (a bank consumer-facing site and its affiliated personal-finance content site), the sensitivity of the content browsed (content concerning debt solutions, debt consolidation, and the management of personal finances), the persistent and cross-site nature of the identifiers used, and the commercial exploitation of the intercepted data.

86.   As a result of Defendant's invasion of their privacy, Plaintiff and Class Members have suffered harm, including loss of privacy, loss of control over their personal information, and the unauthorized commercial exploitation of their browsing activity. Plaintiff and the Class seek injunctive relief, nominal damages, and all other relief authorized by law.

## XII.   FIFTH CAUSE OF ACTION

### Intrusion Upon Seclusion

### By Plaintiff and the Class Members Against Defendant

87.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

88.   Plaintiff brings this cause of action on behalf of himself and the Class.

89.   The common law tort of intrusion upon seclusion requires: (1) an intentional intrusion, physically or otherwise, into a place, conversation, or matter in which the plaintiff has a reasonable expectation of privacy; and (2) that the intrusion would be highly offensive to a reasonable person.

90.   Defendant intentionally intruded into Plaintiff's and Class Members' electronic communications with the Website by deliberately embedding the Google trackers, which intercepted the URL contents of those communications in real time and transmitted them to a third party without Plaintiff's knowledge or consent. Plaintiff had a reasonable expectation of privacy in the contents of those communications.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

91. The intrusion is highly offensive to a reasonable person. Defendant covertly deployed tracking technologies that captured the specific content Plaintiff was browsing, including his verbatim on-site searches for "Debt solutions" and "debt" and his use of debt calculators and money-management content, and transmitted it to a third-party commercial entity for advertising targeting and analytics. The covert and non-consensual nature of the interception, the nature of the Website and the sensitivity of the content browsed, the commercial exploitation of the intercepted browsing activity for advertising and data-analytics purposes, and the use of persistent identifiers to build comprehensive user profiles without disclosure all render the intrusion highly offensive to a reasonable person.

92. As a result of Defendant's intrusion upon their seclusion, Plaintiff and Class Members have suffered harm, including loss of privacy, emotional distress, and the unauthorized exploitation of their personal information. Plaintiff and the Class seek compensatory damages, nominal damages, injunctive relief, and all other appropriate relief.

## XIII.  SIXTH CAUSE OF ACTION

### Unjust Enrichment

### By Plaintiff and the Class Members Against Defendant

93. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

94. Plaintiff brings this cause of action on behalf of himself and the Class.

95. Unjust enrichment requires: (1) a benefit conferred on the defendant; (2) at the expense of the plaintiff; and (3) circumstances that make it inequitable for the defendant to retain the benefit without compensating the plaintiff.

96. Defendant received a benefit by permitting third parties to deploy their tracking technologies on the Website. In exchange for allowing these third parties to intercept and collect the URL contents of visitors' communications with the Website, Defendant received monetary compensation, data licensing benefits, audience-targeting

capabilities, conversion-tracking analytics, identity-resolution outputs, and other commercial value. Defendant's arrangement with these tracking operators enabled Defendant to offer analytics, retargeting, identity-resolution, and advertising services that generated commercial revenue and business value for Defendant itself; Defendant, not the tracking operators, is the recipient of this benefit.

97.    Defendant received this benefit at Plaintiff's and Class Members' expense. Plaintiff's and Class Members' browsing data constitutes personal property with recognized economic value in the digital advertising marketplace. By intercepting the URL contents of Plaintiff's communications and transmitting them to third-party trackers, Defendant and their tracking partners extracted the commercial value of that data without compensation. Plaintiff and Class Members also suffered the loss of control over their personal information, which has recognized economic value as a privacy-protective property interest.

98.    It is inequitable for Defendant to retain the benefits of their data-for-services arrangement without compensating Plaintiff and Class Members whose browsing activity was the source of that commercial value. Defendant's concealment of the tracking arrangement and their failure to obtain Plaintiff's and Class Members' informed consent render retention of those benefits unjust.

99.    Plaintiff and the Class seek restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense.

## XIV.  PRAYER FOR RELIEF

100.    WHEREFORE, Plaintiff prays for the following:

1. An order certifying the Class, naming Plaintiff as Class representative, and naming Plaintiff's attorneys as Class counsel;

2. An order declaring that Defendant's conduct violates Cal. Penal Code § 631(a), 18 U.S.C. § 2511(1)(a), Cal. Bus. & Prof. Code § 17200, et seq., Article I, Section 1 of the California Constitution, and the common law prohibition against intrusion upon seclusion;

27

3.  An order enjoining Defendant from continuing the conduct alleged herein;

4.  Statutory damages pursuant to Cal. Penal Code § 637.2(a)(1) of $5,000 per violation;

5.  Statutory damages pursuant to 18 U.S.C. § 2520 of the greater of actual damages plus any profits made by Defendant through the violation, or $100 per day per violation or $10,000, whichever is greater;

6.  Punitive damages pursuant to 18 U.S.C. § 2520;

7.  Restitution pursuant to Cal. Bus. & Prof. Code § 17200, et seq.;

8.  Nominal damages and injunctive relief for violation of Article I, Section 1 of the California Constitution;

9.  Compensatory and nominal damages for intrusion upon seclusion;

10. Restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense;

11. Prejudgment interest;

12. Reasonable attorney's fees and costs; and

13. Such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## XV.   DEMAND FOR JURY TRIAL

101.   Plaintiff hereby demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

Dated:   July 3, 2026          **NATHAN & ASSOCIATES, APC**

By: */s/ Reuben D. Nathan*
Reuben D. Nathan
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

**LAW OFFICES OF ROSS CORNELL, APC**
Ross Cornell, Esq. (SBN 210413)
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED